BUFFINGTON, District Judge.
This bill in equity is brought by Robert Munroe against Riter & Conley for alleged infringement of the single claim of letters patent No. 339,998, granted said Munroe April 13, 1886, for a manhole cover. Manholes are openings in boilers to permit entrance for cleaning or repairs. In the ordinary prior construction, a hole of the desired size was cut in the boiler head, and to stiffen or strengthen the structure around this opening, a heavy iron ring was internally fastened by countersunk rivets. Against this ring a plate or cover with flat face was placed, and adapted to be drawn to it by screw bolts supported in arches which straddled the exterior side of the opening. A gasket of lead was put between the ring and cover to form a steam tight joint when pressure was applied. This system was confessedly faulty. The placing of the reinforcing ring was expensive. When done, it presented a broad, rough, and uneven surface for making a joint, and this required great straining of arches and bolts to perfectly unite the two' surfaces. Hence the arches or bolts were often broken, boiler heads strained, and the manhole opening became untrue. Pounding, which then had to be done to prevent leakages, loosened the rivets.
Complainant, by an ingenious combination, and placing in new relation of elements in themselves old, produced a manhole which overcame these difficulties. The simplicity, efficiency, and saving capacity of it have commended it to boiler constructors, and it has gone into general use in the building of new boilers. His device is embodied in the ‘ patent noted above. He cut in the boiler head an opening • smaller than the manhole desired, and increased it to the required dimension by .flanging up the edge. This edge, trimmed to a smooth, uniform surface, was well adapted to making a perfect joint, and the flanging so stiffened the boiler head as to wholly dispense with the old reinforcing ring. In the manhole cover near the outer edge was a circumferential groove, less in depth than the height of the flange, in which a lead gasket or other suitable packing was seated. On the' outer face of the cover were handles and lugs engaging with securing bolts by means of which cover and flange were drawn together and a tight joint ensured. The claim is for:
*987 “A metal plate or head for boilers, etc., having a manhole therein, said hole or opening being surrounded by a flange integral with the head, as described, in combination with a cover having a circumferential groove therein for the reception of the flange, substantially as set forth.”
While the claim is not expressly limited to an interiorly placed cover, we are clearly of opinion it is impliedly so limited and must be so read. The specification calls for lugs and handles on the outer face of the cover and necessarily refer to a cover attached from within. Such cover alone is shown in the drawings and the device, if capable of exterior use at all, would virtually have to be reconstructed to fit it for such use and would then lose one of its most efficient factors, viz., the pressure of the steam tending to close instead of open the joint. To a person versed in boiler construction, and in the light of the knowledge of such persons in the art, the patent must be read, the cover suggested could mean no other kind.
This devise served to effectually stiffen the boiler head by the simple operation of flanging, while the narrow and even edge of the flange as compared with the broad and uneven surface of the old reinforcing ring permitted it to imbed itself deeply and regularly in the groove-confined lead gasket, and insured in the groove in which it ivas thus seated a more perfect and lasting joint by the use of much less pressure and consequent strain than under the old system. The substantial advantages of this device are testified to by several witnesses for complainant and denied by'none of respondents. Without discussing these in detail, we may say that the device is one of decided merit, it is less expensive to construct, more efficient in. service, more durable in character than the prior construction, and is made with much less pressure and consequent strain on the parts. It is strongly contended, however, that in view of prior constructions the device is void of ■novelty and patentability.
A close inspection of the most pertinent of these refutes the charge of lack of novelty. While it may be conceded that each element of Munroe’s device is found singly in some of them, yet in none is his combination found in its entirety or in the functional capacity peculiar to it. The British patent of Watkins, No. 5,089 of 1882, goes no further than the general idea of flanging a manhole opening; there is no suggestion of the kind of cover to be used, or whether the cover is used externally or internally. Indeed, it contains in substance no more than that which Munroe’s specification concedes was then old in the art, viz., flanging in making boiler flue openings, obviously an analogous use. In the British patent of Sinclair, No. 2,004 of 1877, we. find a door frame formed by an angle-section cast iron frame externally riveted around an opening in a supplemental boiler used for boiling rags with steam generated in another boiler. A' cast iron door with a groove and containing a gasket, engages therein with the projecting edge of the frame and form a male and female joint. These parts are kept in engagement by means of exterior bridles, screws and bars. This particular device was intended for low pressures in these supplemental boilers and when the highest pressure was used the patentee provided a strengthening interior frame attached by rivets passed through it, the shell and the outside frame. The *988 device radically differs from Munroe’s in this: Sinclair’s purpose is to overcome the steam pressure by external restraint, while Munroe utilizes the steam pressure itself to tighten the joint Toy internal pressuit. In addition to this, it lacks the simple and effective method of strengthening by flanging. It will thus be seen that while the device shows, in certain species of supplemental boilers, a joint formed by a projecting edge from an external riveted frame, a groove in the cover and an inlaid gasket, yet, if applicable at all to generating boilers with high pressure, it. lacks two elements essential to the functional success of Munroe’s device, viz., a flanged opening and a grooved cover internally applied.. The Jutte manhole, while a step in the direction of the Mun-roe device, stopped far short of it. In it, a broad reinforcing band of the ordinary size was riveted internally and presented the rough, broad, uneven surface of that construction. The cover, which was applied internally, had two circumferential flanges between which a lead gasket was placed. The inner flange was stationary; the outer a movable ring.
Without discussing the voluminous testimony on the subject, all of which we have examined with care,.we may say the weight of it is that this ring was not of such size as to slip over the strengthening gasket, but impinged upon it and receded as the two came in contact or as the lead was pressed out between them. While, therefore, in connection with the inner flange, the ring formed a temporary groove to keep the lead from spreading, yet this was its sole function. It did not and could not form a seating or stay for the reinforcing gasket, nor was it adapted to conjoint use with a narrow, flanged, manhole edge, for the proofs; and there is no evidence to the contrary, show the narrow flange would cut through the gasket in a short time. While it showed an internal application, it lacked the elements of a flanged opening and a male and female joint, which, are essential to the success of the Munroe device. If the differences between the two was such as to be met by mere mechanical skill, it is a significant fact that in spite of all the confessed imperfections of the older manhole, mechanical skill failed for upwards of 30 years to make the change.
The door and joint of the kettles in use by the dyeing company, át Boston, have also been considered. In a general way they are in a type similar to the Sinclair device. What we have said, therefore, in considering that device, will apply to them. We refrain, therefore, from a detailed comparison of them with the Munroe structure. After a full consideration of these and the several other devices disclosed in the proofs, and of the advance made in boiler construction by Mun-roe’s device, we are clearly of opinion it involves both novelty and patentability, and his patent is valid. If the construction placed by us on the claim is correct, infringement has been shown. That the manhole for boiler heads manufactured and sold by respondents infringes is too clear for discussion. It is surrounded by a flange integral with the head, and the internally applied cover has a circumferential groove therein for the reception of the flange. In fact, it is identical in construction with complainant’s save in one immaterial detail, viz., the groove is curved in cross-section in respondent’s; In complainant’s it is square.
*989 So, also, respondent’s saddle construction must be held to infringe. It seems that, owing to the tensile strain on the shell of a boiler being different from that upon the head, it is necessary to use a heavier plate when a manhole is located in the shell. In respondent’s construction, to avoid using an entire heavier plate, an oval section is cut from the center of the ordinary plate, and an oval plate of the required heavier weight, having a manhole with internally flanged edge and called a saddle, is riveted to close the opening thus made. This smaller plate is in reality one of the boiler plates. If no manhole were in it, it would be integral with and a part of the boiler itself. The placing of a manhole in it does not make it less so. The cover is similar to that used by respondent in its boiler head construction. We are therefore of opinion it embodies all the elements of the claim of the patent in suit and infringes thereon.
Let a decree be drawn accordingly.-